ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM. *
This attorney disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Letita Ja-chintha Parker-Davis, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
In May 1992, Carolyn Rhea allegedly sustained injuries at a Schwegmann’s supermarket when a beer display fell on her legs. ^ Thereafter, Ms. Rhea discussed the accident with respondent, who is also Ms. Rhea’s niece.[1] Although no retainer agreement was signed between the parties, respondent had Ms. Rhea sign a medical authorization dated April 29, 1993, approximately one month prior to the one-year anniversary of the accident. The authorization stated in pertinent part: “[y]ou are hereby authorized to give to my attorney, Letita Parker-Davis, all information, facts and particulars, including reports, records, .... ” [emphasis added]. Respondent used the medical authorization to obtain Ms. Rhea’s medical records. However, respondent did not take steps to settle Ms. Rhea’s personal injury claim, nor did respondent file a lawsuit on Ms. Rhea’s behalf within the prescriptive period.
At some point, respondent contacted Ms. Rhea and informed her the case had prescribed. On August 23, 1993, respondent gave Ms. Rhea a check in the amount of $300, 1 ^explaining that “when a case expires, this is what lawyers do.” The check, drawn on respondent’s account, bears the handwritten notation: “[f]ull payment for 77777 case #.”
*570 DISCIPLINARY PROCEEDINGS
After an investigation, the ODC instituted formal charges against respondent, alleging she allowed Ms. Rhea’s claim to prescribe, and failed to advise Ms. Rhea of her rights or to advise her to seek independent counsel. Respondent, through counsel, filed an answer specifically denying the charges.

Hearing Committee Recommendation

A formal hearing was conducted before the hearing committee. Respondent appeared and was represented by counsel. Both respondent and Ms. Rhea testified at the hearing.
Ms. Rhea testified that it was her understanding that respondent was her^attorney. She indicated that when respondent informed her the case was prescribed and gave her the $300, she did not indicate Ms. Rhea had an action against her or that she should discuss the matter with another attorney.
Respondent testified that she believed Ms. Rhea was representing herself in connection with the Schwegmann’s suit. According to respondent, the only assistance she agreed to provide was to obtain Ms. Rhea’s medical records and to show her how to do a quantum study to determine the value of her claim. Respondent testified that after she informed Ms. Rhea that her case was prescribed, Ms. Rhea accused respondent of settling her claim and stealing her money. Respondent indicated she was contacted by several attorneys who stated they represented Ms. Rhea. Respondent testified that one of these attorneys told her Ms. Rhea simply wanted her money and advised respondent “to pay her because it’s not worth the hassle that you are going to go through.”
The committee initially made a factual finding that an attorney-client relationship existed between respondent and Ms. Rhea. The committee placed particular significance on the medical authorization that respondent had Ms. Rhea execute, which expressly states that respondent is Ms. Rhea’s attorney. The committee stated that not only Ms. Rhea, but anyone viewing the authorization would reasonably conclude that respondent was acting as Ms. Rhea’s attorney.
|sHaving found an attorney-client relationship existed between respondent and Ms. Rhea, the committee concluded that respondent violated Rules 1.3 (failure to act with diligence in representing a client) and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct by allowing Ms. Rhea’s claim to prescribe. However, the committee found that the $300 payment made by respondent to Ms. Rhea did not constitute a violation of Rule 1.8(h) of the Rules of Professional Conduct (settling a claim for malpractice without advising the client to seek independent representation), as the payment was not an attempt to settle any potential malpractice claim, but rather an effort by respondent to pay Ms. Rhea what she might have recovered in the underlying tort claim against Schwegmann’s.
As mitigating factors, the committee recognized respondent’s lack of a dishonest or selfish motive and the absence of any prior disciplinary record. It found no aggravating factors.
Based on these findings, the committee recommended that respondent be suspended for a period of three months, with the suspension completely deferred on the condition that she attend, at her own expense, the next session of Ethics School, a program sponsored by the Louisiana State Bar Association, and pass the examination given at the completion of that program.[2]

Disciplinary Board Recommendation

The disciplinary board agreed that the record supported the hearing committee’s *571 findings that an attorney-client relationship existed between Ms. Rhea and respondent, and that respondent neglected Ms. Rhea’s legal matter by failing to file a timely suit on her behalf. The board also found the record supported the committee’s conclusion that respondent did not attempt to settle the malpractice claim by giving Ms. Rhea the $300 payment.[3]
In addition to the mitigating factors recognized by the committee, the board also identified respondent’s inexperience in the practice of law (respondent had only been admitted to the bar for four years when these events occurred) and delay in the disciplinary process (Ms. Rhea’s 1¿complaint was not made until over five years after the events occurred). Based on these considerations, the board concluded a deferred three month suspension, subject to the condition that respondent attend and successfully complete Ethics School, was an appropriate sanction.
Neither the ODC nor respondent filed a timely objection to the recommendation of the disciplinary board.[4]
DISCUSSION
Respondent’s main contention is that no attorney-client relationship existed between herself and Ms. Rhea. However, the hearing committee made a finding of fact that Ms. Rhea believed such a relationship existed, and that this belief was reasonable in light of the medical release respondent had Ms. Rhea sign, which specifically identified respondent as Ms. Rhea’s attorney. In Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567 (La.1986), we held that “[t]he existence of an attorney-client relationship turns largely on the client’s subjective belief that it exists.” Given Ms. Rhea’s testimony that she believed respondent was her attorney, the hearing committee’s factual finding that an attorney-client relationship existed is not clearly wrong.
By failing to keep her client advised of the status of her case and allowing the case to prescribe, respondent clearly violated Rules 1.3 and 1.4 of the Rules of Professional Conduct. After taking into account the mitigating factors identified by the hearing committee and disciplinary board, we conclude a three month suspension, completely deferred subject to the condition that respondent attend and successfully complete Ethics School, is an appropriate sanction.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that Letita Jachintha Parker-Davis be suspended from the practice of law for a period of three months. It is further ordered that this suspension be completely deferred, subject to the condition that respondent, at her expense, attend and successfully complete the next session of Ethics School sponsored by the Louisiana State Bar Association. All costs and | flexpenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
VICTORY, J., dissents and would impose a three month suspension, not deferred.

 Traylor, J., not on panel. Rule IV, Part II, § 3.

. There is a dispute as to when this conversation took place. Ms. Rhea stated that she first discussed the accident with respondent on the day of the accident when she went to respondent’s mother's house. Respondent claims that she first spoke to Ms. Rhea about the accident approximately seven months later when they ran into each other at the store.

. The committee noted that Ethics School is normally part of the diversionary program which is an alternative to discipline under Supreme Court Rule XIX, § 11(H). However, the committee found it represented an ideal alternative to depriving respondent of her livelihood, which would result from an actual suspension.

. The board noted the testimony of Ms. Rhea supports this finding. When asked whether the $300 payment was to settle a malpractice claim, Ms. Rhea stated: "[w]e was [sic] not settling anything ... no, we didn’t settle no [sic] case, no.”

. Although respondent attempted to file an objection, she did so outside of the twenty day period mandated by Supreme Court Rule XIX, § 11(G)(1).