ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
In this matter, the Office of Disciplinary Counsel (“ODC”) seeks review of a recommendation of the disciplinary board dismissing a portion of the formal charges against respondent, Philip Lawrence, an attorney licensed to practice law in Louisiana. In addition, the ODC seeks review of the. disciplinary board’s order that respondent be publicly reprimanded for the misconduct proven in the remaining counts of the formal charges.
PROCEDURAL HISTORY
On November 10, 2000, the ODC filed six counts of formal charges against respondent. The ODC alleged that respondent failed to provide competent representation to one client, in violation of Rule 1.1 of the Rules of Professional Conduct; neglected the legal matters of three clients, in violation of Rule 1.3; failed to communicate with six clients, in violation of Rule 1.4; failed to safeguard the property of one client, in violation of Rule 1.15; and failed to make reasonable efforts to expedite the litigation matters of two clients, a violation of Rule 3.2. Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing on the merits.
Following the hearing, the hearing committee issued its report and recommendation, finding that respondent failed to communicate with two clients and failed to safeguard the property of one client. The committee recommended that the | ¡remainder of the formal charges be dismissed. As discipline, the committee recommended respondent be suspended from the practice of law for three months, fully *700 deferred, subject to a one-year period of probation.
Both respondent and the ODC filed objections to the hearing committee’s recommendation. Respondent objected to the committee’s factual findings and legal conclusions, and argued that he should receive no more than a public reprimand for his misconduct. The ODC objected to the committee’s dismissal of ten of thirteen alleged violations of the Rules of Professional Conduct and to the leniency of the proposed sanction, arguing that respondent should receive an unspecified period of actual suspension, followed by probation with special conditions to protect the public.
Following its review, the disciplinary board generally adopted the hearing committee’s factual findings, and agreed that the committee correctly applied the Rules of Professional Conduct in connection with Counts I through VI. However, the board, with one dissenting member, concluded the appropriate sanction for respondent’s misconduct is a public reprimand.
The ODC sought review of the board’s ruling in this court. On December 16, 2002, the court ordered the parties to submit briefs (without oral argument) addressing the issue of whether the record supports the disciplinary board’s report. Respondent and the ODC both timely filed briefs in response to the court’s order.
DISCUSSION
This matter is presented to the court in an unusual procedural context. Ordinarily, a reprimand is a sanction which may be imposed by the disciplinary board itself, without the necessity of a recommendation to this court. Supreme Court Rule XIX, § 10(A)(4). However, under Supreme Court Rule XIX, § 11(G), the board is | ¡¡mandated to file in this court a report containing its findings and recommendations in the event the reprimand is “appealed.” [1]
The use of the word “appeal” in Supreme Court Rule XIX, § 11(G) is something of a misnomer, as bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Therefore, we do not consider this matter in the capacity of an appellate court; instead, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). Nonetheless, we generally accept the credibility evaluations made by those hearing committee members “who were present during respondent’s testimony and who act as the eyes and ears of this court.” In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548. With this standard in mind, we now turn to a review of the record.
REVIEW OF THE RECORD
Count I — The Douglas Matter
Jerald Douglas retained respondent to handle a child support matter that was scheduled for hearing on August 24, 1998. The ODC alleges that on August 22, 1998, *701 respondent accepted $150 from Mr. Douglas, with the understanding that respondent would have the hearing rescheduled because he had a conflict and could not appear on that date. Nevertheless, respondent neither filed for a continuance nor appeared |4at the hearing, and a ruling adverse to Mr. Douglas was issued in the case. Respondent subsequently filed pleadings on Mr. Douglas’ behalf, but they were rejected in light of his non-appearance at the August 24 hearing. The ODC alleges respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client) and 1.4 (failure to communicate with a client).
Mr. Douglas did not testify at the disciplinary hearing. Testifying on his own behalf, respondent explained that he was not aware that a hearing was set in the child support matter on August 24, 1998, and testified that he did not tell Mr. Douglas that he had a conflict on that date and would have the hearing continued. Respondent did not attend the hearing, but he later filed a motion objecting to the recommendation made by the hearing officer concerning the child support issue.
The hearing committee found the ODC failed to prove that respondent was aware of the August 24 hearing. Noting that Mr. Douglas was not available to testify regarding his conversation with respondent, the committee accepted respondent’s testimony that had he been aware of the hearing and if he had a conflict, he would have filed a timely motion to continue the hearing, rather than file the motion for disagreement hearing that he subsequently filed. Based on this reasoning, the committee recommended that Count I of the formal charges be dismissed. We find no error in this conclusion.
Count II — The Hubert Matter
On January 14, 1999, Brian Hubert, a U.S. Navy seaman, died in an accident aboard a naval vessel docked in Virginia. Earl and Marie Hubert, Brian’s parents, subsequently retained respondent to file a wrongful death claim on their behalf. Respondent failed to communicate with his clients and failed to update them on the |fistatus of the case. Respondent also lost his clients’ file, which contained, among other things, original photographs of the ship where Brian died. The ODC alleges respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3, 1.4, and 1.15 (safekeeping property of clients or third persons).
Mr. and Mrs. Hubert testified that they first met with respondent on January 27, 1999 for an initial consultation concerning the accidental death of their son. The Huberts chose to discuss the matter with respondent because his telephone book advertisement noted his experience in military law and wrongful death cases.[2] At this meeting, the Huberts gave respondent the original photographs of the ship where their son died. Respondent informed the Huberts that he would contact individuals in Virginia, the state where the accident occurred, to investigate the matter.
The Huberts testified that they did not hear from respondent after the initial consultation, although they made numerous telephone calls (some two to five per day) to him seeking information as to the status of their case. The Huberts testified that respondent did not return these calls, so *702 they resorted to visiting his office in person in order to speak with him. On March 3,1999, one occasion on which the Huberts were able to meet with respondent, the parties entered into a formal retainer agreement. At this meeting, the Huberts apparently asked respondent why he would not return their telephone calls; he apologized and promised to speak with them “once a week.” Nevertheless, the pattern of non-communication continued. On March 17, 1999, respondent mailed a certified letter to the Huberts declining their representation, stating that he is not licensed to practice law in the Commonwealth of Virginia, the state which had jurisdiction over Brian Hubert’s wrongful death. The Huberts had not [¿received this letter when Mr. Hubert made one of his regular visits to respondent’s office on March 22, 1999. At that time, respondent informed Mr. Hubert that he could not handle the wrongful death case. Although Mr. Hubert was apparently shocked by this news, he agreed to find another attorney and asked respondent to return the original photographs that had been left with him in January. Respondent said that he could not locate the pictures, but that he would mail them to the Huberts as soon as they were located. On March 23, Mrs. Hubert left a message for respondent that she wanted the photographs and would pick them up the following day. On March 24, the Huberts appeared in respondent’s office, and after waiting for him for several hours, he informed them that he could not locate the pictures. At that point, a frustrated Mrs. Hubert threatened respondent[3] and then called the police. The Huberts testified that to this day, respondent has never returned the original photographs they gave him.
In a sworn statement given by respondent in connection with the ODC’s investigation of the Huberts’ complaint, respondent asserted that he returned telephone calls from the Huberts once or twice a week. He also admitted that he has been unable to locate the original pictures the Huberts gave him, but stated that he believed the Huberts still had possession of the negatives.
The hearing committee found the ODC failed to prove that respondent was not competent to handle the Huberts’ wrongful death claim. The committee further found that no attorney-client relationship existed between respondent and the Huberts until March 3, 1999, when the formal retainer agreement was executed;[4] and that after |7March 3, respondent did not communicate with his clients until March 17, when he mailed the letter to them terminating his representation. Notwithstanding this finding, the committee concluded that a two-week period of no communication was not unreasonable on respondent’s part. Finally, the committee found that respondent misplaced the Huberts’ file and the photographs they had entrusted to him. Based on this reasoning, the committee found that respondent violated Rule 1.15 by failing to safeguard the property of his clients. The committee recommended that the alleged violations of Rules 1.1, 1.3, and *703 1.4 be dismissed. We find no error in this conclusion.
Count III — The Williams Matter
In November 1998, Charles and Diana Williams retained respondent to handle a real estate matter. Respondent failed to communicate with his clients and failed to update them on the status of their case. Specifically, the ODC alleges that respondent failed to respond to his clients’ telephone calls, and that when he did speak with them, he simply gave vague responses and assurances without any detail as to what would happen next. After Mr. and Mrs. Williams terminated respondent’s representation, respondent failed to return their file or to communicate with their new counsel. The ODC alleges respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 and 1.4.
In September 1998, Mr. and Mrs. Williams purchased a home in Mandeville, Louisiana. Mr. and Mrs. Williams later became involved in a dispute with their real estate agent arising out of the transaction, and in November 1998, they retained respondent and instructed him to obtain a rescission of the sale. Mr. Williams testified at the disciplinary hearing that he tried to call respondent on numerous occasions, but that respondent was very slow to return the calls, if he did so at all. Mr. Williams further complained that when he and his wife gave depositions in the case, respondent | «appeared unprepared and did nothing to protect their interests. Finally, Mr. Williams expressed his dissatisfaction with the pace of the litigation, particularly with respect to the delay by respondent in setting the case for trial. Mr. Williams testified that when he called the clerk of court’s office to confirm that respondent had followed through with filing a motion to set the case for trial, he learned that respondent had not used the proper form and that filing fees were still owed. At that point, Mr. Williams terminated respondent’s representation and retained another attorney to handle the case.
The documentary evidence in the record reveals that on November 18, 1998, respondent sent a demand letter to the Williams’ real estate agent in an attempt to resolve the parties’ dispute amicably. This attempt was ultimately unsuccessful, and respondent filed suit against the agent and his real estate firm on February 26, 1999. After the answer was filed, the parties exchanged written discovery requests. Respondent propounded discovery on behalf of his clients on April 14, 1999 and filed an answer to defendants’ discovery on May 14,1999.
On June 8, 1999, respondent sent Mr. Williams a bill for the time he had worked on the case. The invoice included charges for client telephone conversations on December 14, 1998; January 6 and 12, 1999; February 1, 9, 24, and 25, 1999; March 1, 5, 17, 24, 29, and 30, 1999; April 2, 6, and 12, 1999; May 4 and 14, 1999; and June 7, 1999.
Defense counsel conducted depositions of the plaintiffs and the real estate agent on June 14, 1999. Respondent met with his clients before the depositions and participated in the depositions as counsel for the plaintiffs.
On July 2, 1999, respondent filed a motion to set the case for trial. When respondent sent a copy of the motion to Mr. and Mrs. Williams, he included another bill for services rendered. This invoice included charges for client telephone 19conversations on June 14 and July 2, 1999. On August 5, 1999, Mr. and Mrs. Williams terminated respondent’s representation and requested that their file be forwarded to their new attorney. On August 20, 1999, respondent filed a motion to withdraw as counsel of record.
*704 The hearing committee concluded the ODC failed to prove that respondent neglected the Williams’ case or failed to communicate with his clients. The committee found that no more than eight months passed from the time respondent first met with his clients until the time he filed the motion to set the case for trial. Moreover, during that time, respondent attempted to resolve the matter without the necessity of filing suit, filed the necessary pleadings once those attempts failed, conducted and responded to written discovery, and participated in the depositions of the parties. The committee concluded respondent’s efforts were diligent, and that Mr. and Mrs. Williams were aware of these efforts through frequent telephone calls and letters. Based on this reasoning, the committee recommended that Count III of the formal charges be dismissed. We find no error in this conclusion.
Count IV — The Bell Matter
Sharon Bell retained respondent to assist her in recovering several thousand dollars paid out of her checking account on a forged check. Respondent neglected the matter and failed to communicate with his client. The ODC alleges respondent’s conduct violated Rule 1.4 of the Rules of Professional Conduct.
Ms. Bell testified that after she retained respondent, she met with him on one occasion and gave him a $500 retainer fee. Thereafter, she left numerous messages with respondent’s secretary, but he never returned her calls. On one occasion, in an attempt to reach respondent by telephone, Ms. Bell gave a false name, Lisa Morgan. Respondent accepted the call from “Lisa Morgan,” and when he discovered the caller linwas Ms. Bell, he told her simply that he was “taking care of it.”[5] Respondent later billed Ms. Bell for several client telephone consultations which she denied ever occurred. After becoming dissatisfied with respondent’s representation, and considering her need for the money that had been stolen from her, Ms. Bell eventually retained new counsel to handle the matter.
According to respondent’s billing records, Ms. Bell first consulted with him on July 12, 1999. After several further conversations with Ms. Bell, respondent contacted her bank on July 30. Respondent subsequently forwarded the bank paperwork completed by Ms. Bell in connection with her forgery claim. Respondent’s records indicate that he returned Ms. Bell’s file to her on August 28,1999.
Finding Ms. Bell’s testimony credible, the hearing committee concluded that respondent failed to keep his client reasonably informed concerning the status of her legal matter. The committee found that during the short period of time respondent represented Ms. Bell, he failed to respond to her reasonable requests for information and that Ms. Bell had to resort to using a false name to ensure that respondent would take her call. Based on this reasoning, the committee found that respondent violated Rule 1.4 of the Rules of Professional Conduct. We find no error in this conclusion.
Count V — The Mack Matter
In July 1999, Chalena Mack retained respondent to handle a civil matter involving the Louisiana Air National Guard. Respondent failed to expedite the matter, although there was some exigency, and failed to communicate with his client. The ODC alleges respondent’s conduct violated the following provisions of the Rules of ^^Professional Conduct: Rules 1.4 and 3.2 (failure to make reasonable efforts to expedite litigation).
*705 While Ms. Mack was on active duty with the Louisiana Air National Guard, a military-owned notebook computer turned up missing. Ms. Mack was accused of failing to adequately secure the computer, and her commanding officer determined that several thousand dollars would be withheld from her paycheck to pay for it. On July 29, 1999, Ms. Mack retained respondent to represent her in a claim against the National Guard for falsely accusing her of losing the computer.[6] Ms. Mack also wanted to enjoin the National Guard from taking any money from her paycheck. She explained to respondent that she was “under a time crunch” because the military wanted to take the funds out of her paycheck almost immediately.[7] On August 2, 1999, Ms. Mack met with respondent and gave him a $1,000 retainer fee, but thereafter, she was unable to reach respondent. Ms. Mack testified that between August 24 and September 13,1999, she called respondent twenty-nine times; these calls were not returned. However, Ms. Mack’s husband (who does not share the same last name as Ms. Mack) was able to reach respondent by telephone, as were friends of Ms. Mack’s (who called within minutes of Ms. Mack’s doing so and being told that he was not in). In the interim, on September 2, Ms. Mack visited respondent’s office and requested the return of her file and her retainer fee. She received neither, so she returned on September 13, at which time respondent returned her file, but not the retainer. When Ms. Mack returned the following day, September 14, respondent complained that she was verbally abusive, so he summoned security officers to escort her from the budding. Ultimately, it was not until March 2000, long after Ms. Mack hpfiled a complaint against respondent with the ODC, that he refunded the $1,000 retainer fee.
In his sworn statement, respondent admitted that Ms. Mack called him numerous times, perhaps even more than the twenty-nine times she asserted. He stated that he returned her call one day in August when his receptionist reported that Ms. Mack had called fifteen times in approximately fifteen minutes.
The hearing committee found there was no evidence presented demonstrating that respondent failed to make reasonable efforts to expedite Ms. Mack’s legal matter. Ms. Mack told respondent that he had until August 31, 1999 to handle the pay-cheek issue, then she discharged him on September 2. Nevertheless, the committee found that respondent failed to keep his client reasonably informed concerning the status of her legal matter. The committee found that respondent did not return the numerous calls made to him by Ms. Mack seeking information. Based on this reasoning, the committee found that respondent violated Rule 1.4 by failing to communicate with his client. The committee recommended that the alleged violation of Rule 3.2 be dismissed. We find no error in this conclusion.
Count VI — The Tucker Matter
In April 1999, Edward Tucker retained respondent to handle his divorce. Respondent neglected the matter and failed to communicate with his client. Specifically, the ODC alleges that even though respondent was unable to serve the opposing party, he did not attempt to use a special process server or other methods to facili *706 tate movement in the case. Respondent failed to complete the divorce and failed to return the unearned portion of the legal fee Mr. Tucker paid. The ODC alleges respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 and 3.2.
l13On April 5, 1999, respondent filed a petition for divorce on behalf of Mr. Tucker, based on La. Civ.Code art. 102. Respondent amended the petition on October 27, 1999 to seek a divorce based on La. Civ.Code art. 103. Service of the petitions upon Mrs. Ursula Tucker was attempted without success. On January 19, 2000, respondent requested service a second time after obtaining a new address for Mrs. Tucker from his client. When Mr. Tucker terminated respondent’s representation in March 2000, Mrs. Tucker still had not been served. Furthermore, Mr. Tucker testified that he attempted to contact respondent during this period, but respondent did not return the calls.
Testifying on his own behalf, respondent asserted that he did return Mr. Tucker’s telephone calls. Respondent also contended that in his judgment, the two-month period between the time he requested service at Mrs. Tucker’s new address and the time he was discharged by his client was not sufficient to allow the sheriff to make a diligent attempt to serve Mrs. Tucker. Respondent testified that had three or four months passed, then he would have taken additional steps to obtain service. Respondent stated that given the additional costs of appointing a special process server, he thought Mr. Tucker would best be served by allowing the sheriff additional time to make service.
The hearing committee concluded that without more to substantiate Mr. Tucker’s testimony concerning the telephone calls, the ODC failed to meet its burden of proving that respondent failed to communicate with his client. Moreover, the committee found there was no evidence presented demonstrating that respondent failed to make reasonable efforts to expedite Mr. Tucker’s legal matter. No evidence was submitted to suggest that respondent’s judgment was unreasonable or inconsistent with his client’s interests. Based on this reasoning, the committee recommended that Count VI of the formal charges be dismissed. We find no error in this conclusion.
luSANCTION
Having found no error in the hearing committee’s factual findings, we now consider the proper sanction to be imposed for respondent’s failure to communicate with his clients in the Bell and Mack matters and failure to safeguard the property of his clients in the Hubert matter.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for conduct similar to respondent’s has generally been in the range of a suspension of one year or less, which may be deferred. See In re: Parker-Davis, 99-2953 (La.1/7/00), 763 So.2d 569 (fully deferred three-month suspension imposed upon an attorney who failed to communicate with her client and allowed the client’s case to prescribe); In re: Broussard, 95-1454 (La.9/15/95), 660 So.2d 818 (fully deferred one year and one day *707 suspension imposed upon an attorney who allowed a personal injury claim to prescribe and misled the client into believing a settlement had occurred); In re: Crawford, 94-2960 (La.3/10/95), 651 So.2d 1338 (six-month suspension imposed upon an attorney who neglected a legal matter, failed to communicate with his client, and commingled client funds; substantial mitigating factors noted); and In re: Durusau, 94-1412 (La.7/1/94), 638 So.2d 644 (a one year and one day suspension imposed upon an attorney who accepted advance payments from two clients and failed to perform any legal services).
115As aggravating factors, we recognize a pattern of misconduct, multiple offenses, and vulnerability of the victims. In mitigation, we find an absence of a prior disciplinary record, absence of a dishonest or selfish motive, cooperative attitude, and relative inexperience in the practice of law (admitted 1996).
Considering the record as a whole, we find the sanction recommended by the hearing committee, a deferred three-month suspension subject to a one-year period of probation, to be appropriate and responsive to the misconduct.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, it is ordered that Philip Lawrence be suspended from the practice of law in Louisiana for a period of three months. It is further ordered that this suspension be deferred, subject to a one-year period of probation. Any misconduct by respondent during the period of probation shall be grounds for imposition of the deferred portion of the suspension, or additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., dissents and would impose a period of suspension.

. Supreme Court Rule XIX, § 11(G) provides, in pertinent part:
The board shall promptly submit to the court a report containing its findings and recommendations on each matter heard other than those that have been remanded, dismissed and not appealed, or concluded by probation or a reprimand that is not appealed, [emphasis added].
While this rule is perhaps not a model of clarity, the clear implication is that if the board's reprimand is appealed, it must file its findings and recommendation in this court.

. Respondent served in the U.S. Marines for six years as an intelligence officer and is currently a major in the Marine Corps Reserve. The Hubert matter was respondent’s first wrongful death case.

. Mrs. Hubert testified that she told respondent “I know where you live,” at which point, respondent "got very hostile and said that we were no longer welcomed in his office.”

. Although the Huberts believed respondent was their attorney from their initial meeting on January 27, the committee found their belief was not reasonable because respondent informed the Huberts that he would have to investigate the jurisdictional issues raised by the fact that the accident had occurred in Virginia. See Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567 (La.1986) (holding that the existence of an attorney-client relationship "turns largely on the client’s subjective belief that it exists.”).

. Respondent’s excuse to Ms. Bell for not responding to her calls was that he was busy running his political campaign for State Representative.

. As had the Huberts, Ms. Mack retained respondent because his telephone book advertisement noted his experience in military law.

. The money for the computer was originally scheduled to be withheld from Ms. Mack's paycheck on August 31, 1999, but the money was not actually withheld until November 1999.