954 So.2d 113 (2007)
In re Philip LAWRENCE.
No. 2006-B-2860.
Supreme Court of Louisiana.
April 11, 2007.
Charles Bennett Plattsmier, Baton Rouge, for Applicant.
Philip Lawrence, New Orleans, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Philip Lawrence, an attorney licensed to practice law in Louisiana.

*114 PRIOR DISCIPLINARY HISTORY
Prior to addressing the instant charges, we find it helpful to review respondent's prior discipline. Respondent was admitted to the bar in 1996. In 2000, the ODC filed formal charges against respondent based on misconduct which occurred between 1998 and 1999. We determined respondent violated the Rules of Professional Conduct by failing to communicate with two clients and failing to safeguard the property of another client. We suspended respondent from the practice of law for a period of three months, but deferred that suspension in its entirety and respondent was placed on probation for a period of one year. In re: Lawrence, 02-2791 (La. 1/31/03), 841 So.2d 699 ("Lawrence I").

UNDERLYING FACTS AND PROCEDURAL HISTORY

Count I  The Tyson Matter
In February 2003, Lugene Tyson retained respondent to represent him in a child custody and support case. Mr. Tyson paid respondent a fee of $1,000. Approximately one month later, respondent filed a pleading on behalf of Mr. Tyson entitled "Petition for Custody, Termination of Wage Assignment and/or Garnishment and Return of Child Support Payments."
Initially, Mr. Tyson was able to communicate with respondent; however, as time went on, Mr. Tyson had increasing difficulty contacting respondent and believed respondent was avoiding his calls.[1] In October 2003, while the case was ongoing, Mr. Tyson received a copy of a motion filed by respondent in which he sought to withdraw from representing Mr. Tyson. As a result, Mr. Tyson was forced to handle the case on his own because he could not afford new counsel.
The ODC alleges that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct.

Count II  The Wiltz Matter
In August 2002, Dinah Wiltz retained respondent to represent her in a child support case, paying him $500. After retaining respondent, Ms. Wiltz had difficulty contacting respondent. In particular, she attempted to call him at least twenty times from her cell phone number, but could not reach him. She finally reached him after calling from a different phone number, at which time he advised her he was working on the case; however, he did not keep in contact with her. Ms. Wiltz eventually learned from court personnel (not from respondent) that her case was set for hearing.
The ODC alleges that respondent's conduct violated Rule 1.4 of the Rules of Professional Conduct.

Count III  The Hammonds Matter
In November 2002, Lori Ann Hammonds retained respondent to obtain a protective order on her behalf. On the day that Ms. Hammonds' rule for a protective order was set for hearing, respondent arrived ninety minutes late for court. Thereafter, Ms. Hammonds had difficulty communicating with respondent in an effort to determine whether the protective order had been served on the defendant. Ms. Hammonds was finally able to locate the defendant herself, and she notified respondent of the address for service. The defendant was served and ordered to appear *115 for a hearing on December 13, 2002; however, on that date, respondent failed to appear. Ms. Hammonds unsuccessfully tried to locate respondent and was forced to represent herself at the hearing pro se. Later the same day, respondent met with Ms. Hammonds and explained that he had not been in court because he had been checking on service. Following that meeting, Ms. Hammonds once again had difficulty communicating with respondent. On numerous occasions, Ms. Hammonds tried unsuccessfully to obtain updates from respondent concerning the status of the protective order matter, and when she was able to speak with him, he gave her conflicting accounts of what was happening in the case. The last communication Ms. Hammonds received from respondent was a motion to withdraw.
The ODC alleges that respondent's conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.[2]

Count IV  The Rankin Matter
In August 2002, Denise Rankin retained respondent for the sum of $500 to represent her minor son, Christopher, who had been arrested for aggravated burglary. At that time, respondent promised Ms. Rankin he would meet with Christopher, then call her and discuss what could be done about a bond reduction. However, respondent did not meet with Christopher that day, nor did he call Ms. Rankin. Over the next week, Ms. Rankin tried to reach respondent by telephone, but despite numerous attempts and voice mail messages, she was unsuccessful in speaking with him. Respondent later billed Ms. Rankin for several client telephone consultations, which she denied ever occurred.
The ODC alleges that respondent's conduct violated Rules 1.4 and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count V  The Summers Matter
In June 2002, William and Georgana Summers retained respondent to file bankruptcy on their behalf and to contest a traffic ticket issued to Mr. Summers. Mr. and Mrs. Summers paid respondent a total of $700 in fees and costs. One week later, respondent told Mrs. Summers that the traffic ticket was taken care of and that everything was fine. In mid-July, respondent told his clients they would soon be receiving a letter from the bankruptcy court. In August, Mrs. Summers tried to reach respondent on several occasions, but she was unsuccessful. In September, Mrs. Summers checked with the bankruptcy court and was told nothing had been filed under their names. Concerned, Mrs. Summers contacted the traffic court regarding the ticket, and was told that nothing had been done in that matter and that an attachment was scheduled to be issued on September 17th for Mr. Summers' arrest. After making more unsuccessful attempts to reach respondent, Mr. and Mrs. Summers discharged him on September 16, 2002.
The ODC alleges that respondent's conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.

Count VI  The Richardson Matter
On July 31, 2002, Clifton Richardson retained respondent to handle a bankruptcy matter, paying him $300. Respondent appeared on Mr. Richardson's behalf at an August 6, 2002 hearing in the case, but thereafter he failed to communicate with *116 Mr. Richardson regarding the preparation of a written judgment. Mr. Richardson made numerous attempts to reach respondent between August 7th and August 12th, but respondent did not return Mr. Richardson's telephone calls and messages, nor was he available at his office when Mr. Richardson went there in an attempt to meet with him in person. Concerned that respondent might not prepare the bankruptcy judgment in a timely fashion, Mr. Richardson terminated respondent's representation by letter dated August 12, 2002 and prepared the judgment himself. Mr. Richardson subsequently received a billing statement from respondent, which reflected a telephone call that he denied ever occurred.
The ODC alleges that respondent's conduct violated Rules 1.4 and 8.4(c) of the Rules of Professional Conduct.

Count VII  The Shoemaker Matter
In March 2001, Byron Shoemaker, who was in the U.S. Navy, retained respondent for the sum of $1,500 to represent him in connection with a disciplinary hearing before a military review board.[3] On the night before the hearing, respondent informed Mr. Shoemaker that he would be unable to appear at the hearing because his girlfriend was having a medical procedure. Respondent further indicated that he had left messages to this effect with the military board and assured Mr. Shoemaker that the hearing would not proceed in his absence. Despite respondent's assurances, the hearing was not continued and took place as scheduled. Mr. Shoemaker was represented by appointed military counsel at the hearing and was less than honorably discharged from the Navy.
The ODC alleges that respondent's conduct violated Rule 1.3 of the Rules of Professional Conduct.

Count VIII  The Blackwell Matter
Reginald Blackwell, a resident of New York, received a notice indicating that he owed past-due child support in Louisiana. In January 2001, Mr. Blackwell retained respondent, paying him $500 to determine if the amount of the alleged arrearages was correct. Over the next few months, Mr. Blackwell called respondent several times seeking an update on his progress on the case, only to be told each time that respondent had not been able to reach anyone at the child support enforcement division. By May 2001, when respondent had not obtained any more information than Mr. Blackwell himself had already obtained, Mr. Blackwell terminated the representation. Ultimately, the child support arrearage was made executory and Mr. Blackwell's wages were garnished.
The ODC alleges that respondent's conduct violated Rule 3.2 (failure to make reasonable efforts to expedite litigation) of the Rules of Professional Conduct.

Count IX  The Johnson Matter
In March 2000, Shirley Shipman Johnson retained respondent to assist her in developing a book and movie deal based upon the life story of her father, Sergeant Alvin Shipman, a World War II veteran. Ms. Johnson agreed to pay respondent a 15% contingency fee based upon the successful development and sale of Sergeant Shipman's life story. According to Ms. Johnson, respondent did not advise her to obtain independent counsel before she entered into the contingency fee agreement with him.
*117 Without the consent of Ms. Johnson, respondent applied for a copyright for the book about Sergeant Shipman and included his name in the copyright application as an author of the book. Ms. Johnson denies that respondent helped to write the book. The ODC alleges that respondent's conduct violated Rule 1.8 (engaging in a conflict of interest) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS

Formal Charges
After investigation, the ODC filed formal charges against respondent. Respondent filed an answer, and the matter proceeded to a hearing before the hearing committee.

Hearing Committee Recommendation
In the Tyson matter, the committee determined respondent was dilatory in the manner in which he handled Mr. Tyson's case, but did not find the ODC proved by clear and convincing evidence that respondent violated Rule 1.3. However, the committee agreed respondent violated Rule 1.4 by failing to communicate with Mr. Tyson, noting that a client should not have to disguise his identity in order to have his attorney answer the telephone.
In the Wiltz matter, the hearing committee made a finding of fact that respondent was screening his telephone calls and avoiding Ms. Wiltz. The committee observed that Ms. Wiltz should have learned from respondent, not court personnel, when to appear in court. Accordingly, the committee found that respondent failed to communicate with his client in violation of Rule 1.4.
In the Hammonds matter, the committee found it was undisputed respondent was late for a court appearance in Ms. Hammonds' case. The committee found such conduct to be unprofessional; however, considering that Ms. Hammonds did not testify at the disciplinary hearing, the committee determined the ODC did not prove by clear and convincing evidence that respondent violated the Rules of Professional Conduct.
In the Rankin matter, the hearing committee concluded that respondent failed to take immediate action to secure Christopher's release from jail and failed to communicate timely with either Ms. Rankin or Christopher, causing actual harm to Christopher. Based on this reasoning, the committee found that respondent violated Rule 1.4 of the Rules of Professional Conduct. The committee further found that although respondent's billing practices were "sloppy," he did not have an intent to deceive, and thus the committee found no violation of Rule 8.4(c).
In the Summers matter, the hearing committee found that respondent told his clients that he had resolved the traffic ticket when, in fact, he had not. Additionally, it determined he delayed in filing their bankruptcy proceeding. Considering these findings, it concluded he violated Rule 1.3 by neglecting his clients' legal matters. It further found he failed to communicate with his clients or to respond to their telephone calls, in violation of Rule 1.4. The committee also noted respondent's misconduct caused actual harm to his clients by delaying their bankruptcy and by causing an attachment to be issued for Mr. Summers' arrest on the traffic ticket.
In the Shoemaker matter, the hearing committee made a factual finding that respondent failed to appear at the disciplinary hearing and failed to take appropriate precautions to ensure that his client was represented, all in violation of Rule 1.3. It further determined respondent's misconduct caused actual harm to Mr. Shoemaker, *118 who was tried without benefit of a defense by knowledgeable counsel.
In the Blackwell matter, the hearing committee found that respondent took action as requested by Mr. Blackwell and the delays in the matter were occasioned in large part by normal delays inherent in the system. Accordingly, the committee found no violation by respondent of Rule 3.2.
In the Johnson matter, the hearing committee found that the ODC failed to prove by clear and convincing evidence that respondent violated Rule 1.8. It found Ms. Johnson did not deny understanding the terms of the agreement and she admitted having other counsel. It further noted that no evidence was introduced to establish that Ms. Johnson was denied the opportunity to seek the advice of another attorney before she signed the agreement with respondent.
In summary, the committee found that respondent failed to communicate with his clients in the Tyson, Wiltz, Rankin, and Summers matters, and neglected his clients' legal matters in the Summers and Shoemaker matters. The committee found no violations in the Hammonds, Richardson, Blackwell, and Johnson matters.
As aggravating factors, the committee recognized respondent's prior disciplinary record in Lawrence I, multiple offenses, and vulnerability of two of the victims, Christopher Rankin and Byron Shoemaker. The committee also commented that respondent refused to acknowledge the wrongful nature of his conduct, and demonstrated a troubling lack of insight into the allegations. The mitigating factors found by the committee include the absence of a dishonest or selfish motive, personal or emotional problems,[4] timely good faith effort to make restitution or to rectify the consequences of the misconduct,[5] and a cooperative attitude toward the disciplinary proceedings.
Under the circumstances of this case, the committee recommended that respondent be suspended from the practice of law for eighteen months.
The ODC filed an objection to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
The disciplinary board accepted the hearing committee's factual findings in the Tyson, Wiltz, Hammond, Rankin, Summers, Shoemaker, and Johnson matters. However, with regard to the Richardson matter, the board determined the committee was clearly wrong in determining that there was no violation of Rule 1.4. To the contrary, the board found Mr. Richardson's testimony constituted clear and convincing evidence that respondent failed to timely communicate with him. Finally, as to Count IX, the board found respondent's contingent fee agreement with Ms. Johnson was "troubling" as it relates to a conflict of interest involving a business transaction with a client; nevertheless, the board concluded that the committee's factual determinations in this regard are not manifestly erroneous.
In summary, the board determined that respondent violated Rule 1.4 by failing *119 to communicate with his clients in the Tyson, Wiltz, Rankin, Summers, and Richardson matters. It pointed out these clients testified about their repeated efforts to contact respondent by phone, and some attempted to find him at his office, but to no avail. The board also determined respondent neglected the Summers' traffic ticket and bankruptcy matters and failed to appear with Mr. Shoemaker before the military tribunal, in violation of Rule 1.3. However, the board concluded that respondent did not violate the Rules of Professional Conduct as charged in the Hammonds, Blackwell, and Johnson matters.
The board determined that respondent knowingly violated duties owed to his clients and caused actual harm to them. Under the ABA's Standards for Imposing Lawyer Sanctions, it found the baseline sanction for respondent's misconduct is suspension.
The board found the record supports the following mitigating factors: absence of a dishonest or selfish motive, personal or emotional problems, and a cooperative attitude toward the disciplinary proceeding. The board recognized the following aggravating factors: prior disciplinary record, a pattern of misconduct, multiple offenses, and vulnerability of the victims.
Considering the number of clients harmed in the instant case, the board recommended that respondent be suspended from the practice of law for eighteen months and be assessed with all costs of these proceedings.
Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La. 11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we determine the hearing committee's factual findings, as modified by the disciplinary board, are supported by the record.[6] Accordingly, we conclude respondent violated Rule 1.3 by neglecting the Summers and Shoemaker matters and violated Rule 1.4 by failing to communicate with his clients in the Tyson, Wiltz, Rankin, Summers, and Richardson matters.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed *120 depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The genesis of most of respondent's misconduct in the instant case, as well as his earlier misconduct in Lawrence I, is his repeated and willful refusal to keep his clients reasonably informed about the status of their legal matters. As we explained in Louisiana State Bar Ass'n v. St. Romain, 560 So.2d 820, 824 (La.1990), "[p]roper communication with clients is essential to maintain public confidence in the profession."
We are particularly disturbed by the testimony of several clients in this matter who testified that they were forced to call respondent from different telephone numbers in order to get him to answer their calls.[7] There is simply no excuse for such conduct by a member of the bar of this state.
The baseline sanction for respondent's misconduct is a suspension from the practice of law. Several aggravating factors are present, including respondent's prior disciplinary record, a pattern of misconduct, multiple offenses, and vulnerability of the victims. In mitigation, we recognize the absence of a dishonest or selfish motive, personal or emotional problems, and a cooperative attitude toward the disciplinary proceeding.
Considering all these factors, we find the appropriate discipline for respondent's misconduct is an eighteen-month suspension from the practice of law.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Philip Lawrence, Louisiana Bar Roll number 22705, be and he hereby is suspended from the practice of law for a period of eighteen months. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
TRAYLOR, J., dissents and would impose greater penalty.
NOTES
[1] Mr. Tyson testified he had to use a neighbor's telephone "so [respondent] did not recognize my number and maybe he would answer."
[2] The ODC also alleged a violation of Rule 1.5(c) relating to respondent's failure to obtain a contingent fee agreement in connection with a personal injury matter Ms. Hammonds wanted him to handle; however, this charge was dismissed by the ODC during the hearing.
[3] Respondent, who is in the United States Marines Corps Reserves, advertizes that he specializes in military law.
[4] The committee found that respondent was deployed as a member of the National Guard in the midst of some of his client representations and that his girlfriend's medical condition led to some inappropriate behaviors in the Shoemaker matter (Count VII).
[5] Respondent refunded some or all of the attorney's fees paid by Mr. and Mrs. Summers, Mr. Shoemaker, and Mr. Blackwell. Furthermore, following the disciplinary hearing, respondent submitted an affidavit in support of Mr. Shoemaker's appeal of his dismissal from the Navy.
[6] We also note that respondent has not disputed any of the factual findings and confines his objection to the question of whether the board's recommendation of discipline is appropriate.
[7] In his testimony before the hearing committee, respondent made the rather remarkable assertion that his current clients were merely "picking up on" similar comments reported in this court's opinion in Lawrence I. Like the hearing committee, we find no support whatsoever for such a theory.