PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Gregory Swafford, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS
Marie Smith retained respondent to complete a succession. According to Ms. Smith, respondent's fee for handling the matter was initially $5,000. Respondent then expressed an interest in purchasing part of the succession property, specifically a house located on Farragut Street in New Orleans. Thereafter, Ms. Smith and respondent agreed on a purchase price of $30,000 for the Farragut Street property, minus the $5,000 fee. Respondent failed to reduce the terms of the agreement to writing.
In July 2014, Ms. Smith filed a complaint against respondent with the ODC. In his response to the complaint, respondent claimed that he never represented Ms. Smith, nor did he purport to represent her. Respondent claimed that he was interested in purchasing the Farragut Street property in the event that title was cleared and all necessary parties were available and agreeable, but that another attorney would handle the succession work.
In contrast to these claims, Ms. Smith submitted copies of e-mail exchanges between herself and respondent that occurred in March 2014. Ms. Smith forwarded to respondent information pertaining to the heirs and decedents, including their contact information. Respondent instructed Ms. Smith to get death certificates for all of the decedents so that he could "start drafting the petitions."
On March 20, 2014, ten death certificates were hand-delivered to respondent. In a text to Ms. Smith dated June 6, 2014, respondent advised that he would have the succession documents prepared by June 13, 2014. However, respondent failed to provide proof of any action taken regarding the matter. Ultimately, Ms. Smith had another attorney complete the successions and sold the Farragut Street property in 2015.
DISCIPLINARY PROCEEDINGS
In September 2016, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time *959 after commencing the representation), 1.16(d) (obligations upon termination of the representation), and 8.4(a) (violation of the Rules of Professional Conduct).
Respondent answered the formal charges and denied any misconduct. The matter then proceeded to a formal hearing before the hearing committee.
Ms. Smith testified at the hearing that respondent presented himself as being able to "rehab, purchase, and complete" the successions for $30,000. She testified that respondent indicated that he would purchase her family's interest in the Farragut
Street property for $30,000, charge her $5,000 for legal fees to perform the successions to clear title, and provide the remaining $25,000 to the family for disbursement. Pursuant to his instructions, which are contained in e-mail communications with her, Ms. Smith acquired death certificates and delivered them to respondent, believing that he would file the successions necessary to transfer title. Based upon his representations, she believed respondent was providing legal services to her. She did not recall him mentioning that a third party would handle the successions to clear title. Ms. Smith testified that she customarily followed up her phone communications with respondent in an e-mail reflecting the conversation. There was no written purchase agreement regarding the Farragut Street property or any legal representation by respondent as a succession attorney, but there were e-mails between Ms. Smith and respondent where document collection and pleading drafting were discussed. Ms. Smith suffered a lot of duress, fearing that respondent would use the information she provided to take her property.
Respondent testified that he made the $30,000 offer for the Farragut Street property and would allocate $5,000 for the succession work. Respondent stated that the sale was conditioned upon whether the title could be cleared since there were several successions to be opened and relatives to be located. Respondent testified that attorney John Davidson, the owner of Alliance Title, was going to do the succession work. Respondent thought Ms. Smith understood that he would not be doing the succession work. When questioned about his drafting of pleadings and his requesting of documents in e-mail communications with Ms. Smith, respondent testified that he was merely the "facilitator [in] having the petitions drafted" by Mr. Davidson's office. Respondent admitted that he should have communicated better. There was no written agreement between respondent and Ms. Smith for purchase of the property or for legal services. Respondent testified that although he had performed work in succession matters, it was his policy not to personally be the succession attorney on any deal where he is the purchaser.
Hearing Committee Report
After considering the testimony presented at the hearing, as well as the other evidence in the record, the hearing committee made the following factual findings:
Respondent negligently created an attorney-client relationship with Ms. Smith by offering legal services to clear title to the Farragut Street property in association with motives to purchase the same. He negligently failed to act with reasonable diligence and promptness in representing Ms. Smith and negligently failed to take steps reasonably practicable to protect her interests by failing to give her reasonable notice of the termination of his representation.
Despite contradictory testimony on these issues, Ms. Smith had a reasonable belief that she engaged respondent as an attorney to complete the necessary successions to sell the Farragut Street property *960 to him. Respondent directed Ms. Smith to gather and deliver papers to prepare and file succession pleadings. His representations indicate that he intended to perform attorney services in this matter. Upon concluding that he could not handle or "facilitate" the completion of the successions, respondent negligently failed to inform Ms. Smith of his termination of the representation. He should have informed Ms. Smith that he would be unable to complete the successions and go through with the conditional sale of the property. As respondent admitted, his actions fostered and facilitated a great misunderstanding and he should have been clearer.
Based on its factual findings, the committee determined respondent violated Rules 1.3, 1.16(d), and 8.4(a) of the Rules of Professional Conduct. Ms. Smith had a reasonable expectation and belief that respondent would perform the legal work necessary to clear title to the property. Although respondent contended that he acted merely as a real estate investor, his representations, instructions, and communications implied an intention to act in a lawyer capacity.
The committee did not find a violation of Rules 1.4 or 1.5. The interaction between respondent and Ms. Smith was of relatively short duration (five months). During this time, there were reasonably frequent communications between them except as to respondent's terminating the representation. There was no confusion regarding the scope of the representation or rate of the fee, and no written fee agreement was required.
The committee determined that respondent negligently violated a duty owed to his client. Although he caused no appreciable harm to her, his misconduct caused the potential for harm. Ms. Smith ultimately retained an attorney who completed the successions after a couple of months and sold the Farragut Street property. Respondent collected no funds from Ms. Smith and harmed no third party. After reviewing the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the applicable baseline sanction is suspension.
In aggravation, the committee found substantial experience in the practice of law (admitted 1993). In mitigation, the committee found the absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and character or reputation.
Based upon these findings, the committee recommended that respondent be suspended from the practice of law for thirty days, fully deferred. The committee further recommended that respondent be required to attend the Louisiana State Bar Association's ("LSBA") Ethics School.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. Accordingly, the board adopted the committee's factual findings and legal conclusions.
The board determined that respondent violated a duty to his client. His conduct was more knowing than negligent and caused no long-term harm, although the potential for harm existed. Ms. Smith was able to have her legal work concluded by another attorney, but she was clearly frustrated by her inability to obtain information from respondent and by the delay caused by his failure to respond to her several attempts to obtain information from him as to his progress on her legal *961 matter and/or his continued representation. After reviewing the ABA's Standards for Imposing Lawyer Sanctions , the board determined that the baseline sanction is suspension. The board adopted the aggravating and mitigating factors found by the committee.
Considering these circumstances, and the court's prior jurisprudence addressing similar misconduct, the board recommended that respondent be suspended from the practice of law for six months, with three months deferred, subject to a one-year period of probation. The board further recommended that respondent be required to attend the LSBA's Ethics School.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
The record supports the hearing committee's finding that based upon Ms. Smith's reasonable belief that respondent was her attorney, an attorney-client relationship indeed formed between them.[2] The record also supports a finding that respondent failed to complete the succession work for Ms. Smith, failed to respond to her several requests for information, and failed to timely inform her that he would not complete the representation. Based on these facts, respondent has violated Rules 1.3, 1.4, 1.16(d), and 8.4(a) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
Respondent knowingly violated a duty owed to his client. While the actual harm to her was minimal, a potential for harm existed. The applicable baseline sanction is suspension. The aggravating and mitigating factors as found by the hearing committee and adopted by the disciplinary board are supported by the record.
Turning to the issue of an appropriate sanction, the board cited the cases of *962 In re: Jackson , 02-2764 (La. 4/9/03), 842 So.2d 359, and In re: Parker-Davis , 99-2953 (La. 1/7/00), 763 So.2d 569. Like the instant case, the misconduct in these cases hinged on whether an attorney-client relationship had been formed. After finding that such a relationship had indeed formed, we considered the remaining misconduct. The attorney in Jackson neglected a legal matter, which caused the claim to prescribe. The attorney in Parker-Davis failed to communicate with her client and allowed the client's case to prescribe. Both attorneys received a six-month suspension, with three months deferred, and one year of probation with conditions.
In Jackson and Parker-Davis , the misconduct caused serious actual harm in that the client's cause of action had prescribed as a result of the lawyer's misconduct. Although Ms. Smith did not suffer the identical harm that was suffered by the clients in those cases, she apparently suffered extreme duress as a result of respondent's inaction. Based on the content of respondent's e-mails to her, Ms. Smith justifiably believed that respondent was her attorney and that, as her attorney, he would perform the necessary successions. When he failed to do as she expected, she had to retain another attorney. The sanction recommended by the board is therefore warranted.
Accordingly, we will suspend respondent from the practice of law for six months, with three months deferred, subject to a one-year period of probation and Ethics School.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Gregory Swafford, Louisiana Bar Roll number 22165, be and he hereby is suspended from the practice of law for a period of six months. It is further ordered that three months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on probation for a period of one year. As a condition of probation, respondent is ordered to attend and successfully complete the Louisiana State Bar Association's Ethics School. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

On June 1, 2017, respondent was declared ineligible to practice law for failure to comply with mandatory continuing legal education requirements.

In Louisiana State Bar Ass'n v. Bosworth , 481 So.2d 567, 571 (La. 1986), we held that the existence of an attorney-client relationship "turns largely on the client's subjective belief that it exists." In the instant case, copies of the communications between respondent and Ms. Smith which are contained in the record establish that she had a reasonable belief that respondent was her attorney.